UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUSTIN MICHAEL ARCHEY,

    Plaintiff,                                             Case No. 13-cv-13045
                                                                     Hon. Matthew F. Leitman
v.

QBE INSURANCE CORPORATION,

    Defendant.

_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT (ECF ## 18, 20)

## INTRODUCTION

In this action, Plaintiff Justin Michael Archey ("Archey") seeks from Defendant QBE Insurance Corporation ("QBE") certain attendant-care, work-loss, and other benefits available under Michigan's No-Fault Insurance Act. Archey has filed two motions for partial summary judgment. (*See* ECF ## 18, 20.) For the reasons stated below, the Court **GRANTS** Archey's motions.

## RELEVANT FACTUAL BACKGROUND

On June 20, 2012, Archey was a passenger in a pickup truck that was involved in a serious rollover car accident. (*See* medical records at ECF #18-2, Pg. ID 90.) Archey was ejected from the vehicle and suffered substantial injuries, including a fractured spine. (*See id.*) As a result of the accident, Archey is now a quadriplegic. (*See id.* at Pg. ID 91.) The injuries Archey suffered require constant

1

care, and his doctors have prescribed him both attendant-care services (twenty-four hours a day, seven days a week) and household-replacement services. (*See* ECF #12-6; *See also* ECF #12-8 at Pg. ID 132.)

The insurance company responsible for coverage of Archey's benefits is QBE. "QBE does not dispute coverage." (QBE Response Brief, ECF #24 at 1, Pg. ID 320.) Indeed, QBE admits that "[t]o the extent [Archey] can demonstrate that he incurred expenses that are reasonably necessary for his care, recovery and rehabilitation for injuries he sustained in the motor vehicle accident, QBE would be the highest in priority for those benefits." (*Id.*) Moreover, QBE "does not dispute" the "factual account" of the accident or Archey's injuries, and it concedes that Archey requires "significant medical treatment and care." (*Id.*)

## PROCEDURAL HISTORY

On June 10, 2013, Archey filed this action against QBE in the Washtenaw County Circuit Court. (*See* the "Complaint," ECF #1-2.) In his Complaint, Archey alleged that QBE had "refused to pay [him] all those personal protection insurance benefits which have been incurred in accordance with the applicable no fault act and the [provisions of Archey's insurance] contract." (*Id.* at ¶10.) Archey sought a declaratory judgment and asked the state circuit court to determine, among other things, "the amount of personal protection insurance benefits including no fault interest and actual attorney fees are owed to [him]." (*Id.* at ¶

2

15.) QBE thereafter removed Archey's action to this Court. (*See* Notice of Removal, ECF #1.)

Archey has now filed two motions for partial summary judgment. In his first motion, Archey seeks a judgment that he is entitled to the following: (1) payment (pursuant to MCL § 500.3107(1)(a)) for attendant-care services that his family has provided to him; (2) payment (pursuant to MCL § 500.3107(1)(b)) for work-loss benefits to replace wages that Archey earned from his primary employment before he was injured; (3) payment (pursuant to MCL § 500.3107(1)(c)) for household-replacement services; (4) penalty interest (pursuant to MCL § 500.3142); and (5) penalty attorney fees (pursuant to MCL § 500.3148). (*See* ECF #18.) In his second motion, Archey seeks payment for attendant-care services that Health Partners, Inc. ("Health Partners") has provided to him, as well as penalty interest and attorney fees. (*See* ECF #20.) The Court held a hearing on Archey's motions on December 3, 2014, and for the reasons stated herein, it now grants Archey's motions.

## **GOVERNING LEGAL STANDARD**

A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact...." *U.S. SEC v. Sierra Brokerage Services, Inc.,* 712 F.3d 321, 326–27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986)) (quotations omitted). "The mere existence of a

scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson,* 477 U.S. at 252. However, summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251-252. When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* Indeed, "[c]redibility determinations, the weighing of the evidence, and the drafting of legitimate inferences from the facts are jury functions, not those of a judge…" *Id.* at 255.

## ANALYSIS

A.  **Michigan's No-Fault Insurance Benefits Regime**

Michigan's No-Fault Insurance Act, MCL § 500.3101 *et seq.* (the "No-Fault Act"), "is a comprehensive legislative enactment designed to regulate the insurance of motor vehicles in the state of Michigan and the payment of benefits from accidents involving those motor vehicles." *K.G. v. State Farm Mutual Automobile Insurance Company*, 674 F.Supp.2d 862, 866 (E.D. Mich. 2009). Pursuant to the No-Fault Act, an injured person may claim personal injury protection ("PIP") benefits that include the "reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL § 500.3107(1)(a). PIP benefits "are payable to or for the benefit of an injured

person," MCL § 500.3112, and QBE does not challenge Archey's standing to recover benefits in this action.

PIP benefits can include attendant care furnished by family members and/or private health-care providers. *See, e.g., Bajraszewski v. Allstate Ins. Co.*, 825 F.Supp.2d 873, 876 (E.D. Mich. 2011) (citing *Bonkowski v. Allstate Ins. Co.*, 281 Mich.App. 154, 761 N.W.2d 784, 791 (2008)). In addition, a PIP claimant may be entitled to "work loss [benefits] consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he or she had not been injured." MCL § 500.3107(1)(b). An injured party is also entitled to receive what are commonly referred to as "household replacement" services. These are "[e]xpenses not exceeding $20.00 per day, reasonably incurred in obtaining ordinary and necessary services in lieu of those that, if he or she had not been injured, an injured person would have performed during the first 3 years after the date of the accident, not for income but for the benefit of himself or herself or of his or her dependent." MCL § 500.3107(1)(c).

In order to "establish a right to payment, the claimant must present the insurance company 'reasonable proof of the fact and of the amount of loss sustained.'" *Bajraszewski*, 825 F.Supp.2d at 880 (quoting MCL § 500.3142(2)). To recover medical expense reimbursement, for example, "a PIP claimant must prove that [(1)] the charge for the medical service was reasonable, [(2)] the

5

expense was reasonably necessary for the claimants care or treatment, and [(3)] the expense was actually incurred." *Id.* (citing *Nasser v. Auto Club Ins. Ass'n*, 435 Mich. 33, 457 N.W.2d 637, 645 (1990)). This standard "requires only reasonable proof … not exact proof." *Williams v. AAA Mich.*, 250 Mich. App. 249, 646 N.W.2d 476, 485 (2002). Michigan courts have held that a claimant may satisfy the reasonable proof standard by submitting "'a letter and a statement' detailing expenses." *Barjraszewski*, 825 F.Supp.2d at 881 (quoting *Williams*, 646 N.W.2d at 485).

The No-Fault Act requires insurers to act quickly once they receive reasonable proof of a covered loss and the amount of that loss. Indeed, PIP benefits are "overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained." MCL § 500.3142(2). To encourage timely payment of PIP benefits, the No-Fault Act requires insurers to pay "simple interest at the rate of 12% per annum" on overdue payments. MCL § 500.3142(3).[1] To further encourage prompt payment, the No-Fault Act provides that where an accident victim hires an attorney to recover overdue benefits, a court may award a reasonable attorney fee "if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper

---

[1] Where an insurance carrier wishes "to challenge or investigate" claim for PIP benefits, it "should … conduct[] some investigation of its own during the thirty-day legislative grace period…." *Williams*, 646 N.W.2d at 485.

payment." MCL § 500.3148(1). These provisions ensure that the No-Fault Act is not "used as a weapon against rightful payees to a payee's unjustified economic detriment." *Bajraszewski*, 825 F.Supp.2d at 880 (quoting *Lakeland Neurocare Centers v. State Farm Auto Ins. Co.*, 250 Mich. App. 35, 645 N.W.2d 59, 64 (2002)).

B.   **Archey is Entitled to PIP Benefits For the Attendant-Care Services His Family Has Performed**

Archey has submitted evidence that as early as May 14, 2013, he demanded that QBE pay for "family-provided attendant care services" for the period of October 2012 through March 2013. (ECF #18-9.) Archey has also provided evidence that on July 3, 2013, he again demanded that QBE pay for family-provided attendant-care services, this time for April and May of 2013. (*See* ECF #18-10.) In both of these submissions, Archey provided QBE "Affidavits of Attendant Care Claim" forms that detailed the attendant-care services Archey's mother, Kelly Armsden ("Armsden"), provided to him. (*See, e.g.,* ECF #18-9 at 5, Pg. ID 142; ECF #18-10 at 6, Pg. ID 155.) Archey also provided QBE a prescription from his doctor for 24-hour-per-day attendant care services. (*See* ECF #18-10 at 8, Pg. ID 156.)

QBE did not respond to Archey's requests for payment until over eight months after his July 2013 demand. On March 17, 2014, QBE sent Archey "a check in the amount of $5,388.75 representing payment of attendant care provided

by Kelly Armsden [Archey's mother] for the months of April and May, 2013. This payment represent[ed] a rate of $10 per hour." (ECF #18-11.) On June 25, 2014, Archey sent QBE a letter in which he returned QBE's check as insufficient. (*See* ECF #18-13.) Archey rejected the payment because, according to Archey, "QBE paid a reduced number of hours at an unreasonably low rate," and the attempted payment "did not include interest based on MCL 500.3142 and did not include an acknowledgment of QBE's liability for attorney fees based on MCL 500.3148." (ECF #18-13 at 3, Pg. ID 184.) Archey also reiterated his demand for payment of attendant-care benefits for the period of October 2012 through and May 2013. (*See id.*) Finally, Archey demanded payment for attendant-care benefits for the period of June 2013 through May 2014. (*See id.*) As Archey had done with his previous submissions, Archey included with this letter evidence of the attendant-care services Armsden provided and of his need for these services. (*See id.*) QBE did not respond.

As noted above, QBE does not deny that Archey is injured, that he is need of significant medical treatment and care, or that Armsden provided some of this care. Instead, QBE offers two justifications for its failure to pay for the attendant-care services provided by Armsden.

First, QBE argues that the attendant-care services provided by Armsden may have been duplicative of household-replacement services that Armsden also

8

provided and for which Archey also sought payment. (*See* QBE's Response Brief, ECF #325 at 6-7, Pg. ID 325-326.)  QBE says that Archey is double-billing by attempting to recover for these allegedly-duplicative services. (*See id.*)  However, QBE has not provided the Court any actual *evidence* to support its contention that there may have been duplication of services.  Instead, QBE simply states that Archey *may* be double billing for attendant-care and household-replacement services, but it fails to identify for the Court any specific instance of this practice. As QBE itself acknowledges (*see* QBE Response Brief, ECF #24 at 2, Pg. ID 321), in order to avoid summary judgment, it must "do more than raise some doubt as to the existence of a fact; [it] must produce concrete evidence that would be sufficient to require submission to the trier of fact."  *Calhoun v. City of Keego Harbor*, 771 F. Supp. 1473, 1475 (E.D. Mich. 1991).  QBE has failed to do so with its claim of possible double billing.

Second, QBE asserts that it did not pay for the attendant care Armsden provided because Archey did not request a specific hourly rate for Armsden's services.  Therefore, QBE says, it did not know what amount to pay Armsden. (*See* QBE Resp. Br. at 5-6, Pg. ID 324-325.)  QBE's own conduct belies this explanation.  In March 2014 QBE sent Archey a check for attendant-care services provided by Armsden, and that check represented payment for Armsden's services

9

at the rate of ten dollars per hour. Thus, over nine months ago, QBE itself believed that it had the ability to determine an appropriate rate of pay for Armsden.

Moreover, QBE admits that in October 2014, it retained a nurse to value Armsden's services, and the nurse concluded at that time that Armsden should be compensated at "a rate of $10.00 - $11.00 per hour." (*Id.* at 6, Pg. ID 325.) In its brief, QBE told the Court that since it now has the nurse's valuation, it will "issue payment" to Archey for Armsden's services. (*Id.*) But QBE never explained why it did not issue payment immediately upon its receipt of the nurse's October report, nor has QBE provided the Court any evidence it has yet made this payment – more than sixty-days after receiving the opinion.

The Court concludes that Archey has complied with his obligation pursuant to No-Fault Act to provide "reasonable proof of the fact and of the amount of loss sustained" with respect to the attendant-care services Armsden has provided. MCL § 500.3142(2). The Court further concludes that because QBE has not paid Archey these due and owing attendant-care benefits within 30 days of its receipt of "reasonable proof," the benefits are "overdue." MCL § 500.3142(2). The Court therefore **GRANTS** Archey partial summary judgment on his claim for PIP benefits for family-provided attendant-care services. Archey is entitled to payment for the attendant-care services provided by Armsden (and documented in Archey's

repeated submissions to QBE) at a rate of no less than ten dollars per hour. To the extent Archey seeks payment of a higher rate, that issue must be resolved at trial.

C. **Archey is Entitled to PIP Benefits For the Attendant-Care Services Health Partners Has Performed**

Archey has also presented evidence to the Court that QBE has failed to pay for certain attendant-care services provided to him by Health Partners. (*See* ECF #20.) According to Health Partners' Vice President of Operations Peggy Clink ("Clink"), Health Partners "regularly provides [QBE] with its invoices and records documenting the care and treatment provided to [Archey] on indicated dates of service and the charges for such service." (Affidavit of Peggy Clink, ECF #20-7 at ¶4.) According to Clink, QBE "has refused to pay all of Health Partners' charges," and as of September 23, 2014, "$35,558.00 remain[ed] due on the charges." (*Id.* at ¶¶5-6.)

QBE makes only one argument as to why it has not paid these invoices: it had "concerns as to the possibility of double billing for attendant care." (QBE Response Brief, ECF #28 at 4, Pg. ID 348.) Specifically, QBE believed that the services Health Partners provided may have been duplicative of the services Armsden performed, and that Archey was wrongly seeking double payment. However, QBE admits that after it took the depositions of Archey and Armsden on June 26, 2014, it "received clarification as to the services provided by both Health Partners and Mrs. Armsden and why both services were necessary…." (*ID.* at 5,

11

Pg. ID 349.) Yet, despite having its questions regarding the purported double billing answered, QBE has still refused to pay over $35,000 of Health Partners' overdue invoices. Moreover, QBE has provided the Court no actual evidence of any double billing. Simply put, QBE has provided no evidence to justify its failure to timely pay these invoices nor to explain why these invoices remain unpaid more than six months after the depositions.

The Court concludes that Archey has complied with his obligation pursuant to No-Fault Act to provide "reasonable proof of the fact and of the amount of loss sustained" with respect to the attendant-care services provided by Health Partners. MCL § 500.3142(2). The Court further concludes that because QBE has not paid Archey these due and owing attendant-care benefits within 30 days of its receipt of "reasonable proof," the benefits are "overdue." MCL § 500.3142(2). The Court therefore **GRANTS** Archey partial summary judgment on his claim for PIP benefits for attendant-care services provided by Health Partners.

D.  **Archey is Entitled to PIP Work-Loss Benefits**

Archey has provided the Court evidence that on July 14, 2014, he demanded, in writing, that QBE pay work-loss benefits under the No-Fault Act. (*See* ECF #18-14.) In this submission to QBE, Archey provided QBE evidence that before his accident, he "was employed as a line operator at Petoskey Plastics." (*Id* at 3, Pg. ID 201.) Archey also provided QBE additional documents verifying his

employment, his salary, and his inability to work due to the injuries he sustained in his car accident. (*See* ECF #18-14.) QBE did not respond to Archey's request and has not paid him any work-loss benefits.

QBE argued to the Court that it did not have to pay these work-loss benefits for two reasons. First, QBE asserted that it needed additional medical records "to determine if [Archey] is still disabled from any type of employment," and that Archey had not yet provided these records. (ECF #24 at 4, Pg. ID 8.) Thus, according to QBE, Archey had not yet presented "reasonable proof" of his right to continued work-loss benefits. (*See id.*) At oral argument on Archey's motions, however, QBE's counsel candidly acknowledged – and properly so – that because Archey is a quadriplegic who receives Social Security disability benefits, there is no real dispute as to whether Archey is able to work.

Second, QBE argued that it did not pay work-loss benefits to Archey because Archey had not "provided reasonable proof of the fact and amount of his wage loss" with respect to a *second* job Archey purportedly had at a construction company before his injury. (*Id.*) But, Archey has *not* sought any work-loss benefits related to that second job. Instead, he has sought benefits *only* for his job at Petoskey Plastics, and QBE has not argued, much less provided any evidence, that Archey has not satisfied his burden to provide reasonable proof of his loss from that job. QBE's reference to Archey's purported second job is entirely beside

13

the point; that job has no bearing whatsoever on Archey's entitlement to work-loss benefits to compensate for lost wages that he would have earned from Petoskey Plastics.

The Court concludes that Archey has complied with his obligation pursuant to No-Fault Act to provide "reasonable proof of the fact and of the amount of loss sustained" with respect to his work loss from his job at Petoskey Plastics. MCL § 500.3142(2). The Court has further concluded that because QBE has not paid Archey these due and owing work-loss benefits within 30 days of its receipt of "reasonable proof," the benefits are "overdue." MCL § 500.3142(2). The Court therefore **GRANTS** Archey partial summary judgment on his claim for PIP wage-loss benefits related to his previous employment at Petoskey Plastics.

### E. Archey is Entitled to PIP Benefits for Household-Replacement Services

On August 4, 2014, Archey demanded in writing that QBE pay for "replacement services." (ECF #18-15 at 2, Pg. ID 214.) Archey provided QBE "a replacement services calendar for each from December, 2012 through May, 2014" and he demanded payment at the statutory "maximum rate of $20.00 per day." (*Id.*) QBE did not respond to Archey's request and has not provided any payment to him for replacement services.

QBE defends its lack of payment on a single ground: The replacement services in question were provided by Armsden who, as described above, also

provided attendant-care services, and QBE has concerns that Armsden has double-billed for replacement services and attendant-care services. (*See* ECF #24 at 6-7, Pg. ID 325-326.) But as discussed in detail above, QBE has failed to provide any *evidence* of double billing. It has simply made a bald claim that Archey and Armsden may be attempting to double bill for Armsden's services. That is not enough to withstand summary judgment.

The Court concludes that Archey has complied with his obligation pursuant to No-Fault Act to provide "reasonable proof of the fact and of the amount of loss sustained" with respect to household-replacement services. MCL § 500.3142(2). The Court further concludes that because QBE has not paid Archey these due and owing household-replacement benefits within 30 days of its receipt of "reasonable proof," the benefits are "overdue." MCL § 500.3142(2). The Court therefore **GRANTS** Archey partial summary judgment on his claim for PIP benefits for household-replacement services.

F.  **Archey is Entitled to Penalty Interest**

As the Court has explained above, Archey provided QBE with "reasonable proof of the fact and of the amount of loss sustained" in connection with his claims for attendant-care, work-loss, and household-replacement benefits. In each and every instance, Archey provided QBE this reasonable proof more than 30 days ago. Therefore, the benefits are, by operation of Michigan law, "overdue." MCL §

500.3142(2). The No-Fault Act requires the Court to assess penalty interest on these overdue benefits to which Archey is rightly entitled. *See id.; see also Williams*, 646 N.W.2d at 484 ("Penalty interest *must* be assessed against a no-fault insurer if the insurer refused to pay benefits and is later determined to be liable, irrespective of the insurer's good faith in not promptly paying the benefits") (emphasis added).

QBE argues that the Court should not award penalty interest because Archey "has only recently provided the documentation and proof that [QBE] reasonably requested." (ECF #24 at 7, Pg. ID 326.) According to QBE, Archey's "own brief shows that most of the documentation was not provided until approximately 2-3 months ago." (*Id.*) This argument fails for two reasons. First, as described above, Archey provided QBE much of his "reasonable proof" substantially earlier than just "2-3 months ago." Second, even if the Court accepted QBE's assertion that it received Archey's documentation only "2-3 months ago" – and to be clear, it does not – Archey would still be entitled to penalty interest. Where a claimant is rightly entitled to benefits, as Archey is here, an insurer has 30 days, not "2-3 months" to pay those benefits before it is liable for penalty interest.

Here, the Court has determined that QBE is liable for unpaid benefits and that Archey provided reasonable proof of his right to these benefits more than 30-days ago. The Court therefore concludes that Archey is entitled to penalty interest

16

on the past-due attendant-care, work-loss, and household-replacement-services benefits.  The precise calculation of the total amount of that interest – a calculation that necessarily must include a determination of the time at which interest started to accrue on each of the respective claims for benefits – shall be determined in future proceedings.

### G. Archey is Entitled to Penalty Attorney Fees

The No Fault Act provides:

> An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue. The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.

MCL § 500.3148(1).  Furthermore, the Michigan Supreme Court has made "clear that where an insurer has refused or delayed paying benefits once it receives reasonable proof of the fact and amount of loss, there is a presumption that this delay is unreasonable and the burden shifts to the insurer to show that its decision was reasonable."  *K.G.*, 674 F.Supp.2d at 873 (citing *Ross v. Auto Club Group*, 481 Mich. 1, 748 N.W.2d 552, 558 (2008)).  QBE has failed to meet its burden of showing that it has acted reasonably in responding to Archey's claims for benefits.

While it may have been reasonable for QBE, upon receiving Archey's demands for payment, to "conduct[] some investigation of its own during the

17

thirty-day legislative grace period to establish a lesser amount of [] benefits owed," *Williams*, 646 N.W.2d at 485, QBE did not do that. Instead, QBE unreasonably and repeatedly ignored Archey's repeated demands for payment for well-beyond the "thirty-day legislative grace period." QBE even continued to withhold payments long after satisfying itself that benefits were due. For example, QBE's concerns that Health Partners and Armsden may have been double billing for attendant-care services were resolved at depositions in June (*see* ECF #28 at 5, Pg. ID 349) – six months ago – yet QBE has still not paid the past-due Health Partners' invoices. Likewise, QBE wrote in its brief filed in October of this year that it would "issue payment" on Archey's claim for family-provided attendant-care benefits, but there is no evidence it has actually followed through on this promise. (ECF #24 at 6, Pg. ID 325.) Finally, QBE failed to pay wage-loss benefits on the grounds that Archey was not actually disabled – a claim it has since abandoned – and on the false ground that Archey was seeking payment for wages that he would have earned at his supposed second job. QBE's refusals to pay on all of the above-described grounds, and QBE's treatment of Archey – a vulnerable quadriplegic who is plainly entitled to substantial benefits under the No-Fault Act – were patently unreasonable and, indeed, indefensible. For all of these reasons, the Court concludes that Archey is entitled to penalty attorney fees in an amount to be determined in future proceedings.

## CONCLUSION

For all the reasons stated above, **IT IS HEREBY ORDERED** that Archey's motions for partial summary judgment (ECFs ## 18, 20) are **GRANTED** in all of the respects outlined above. **IT IS FURTHER ORDERED** that QBE shall pay to Archey penalty interest and penalty attorney fees with respect to the overdue attendant-care, work-loss, and household-replacement-services benefits in an amount to be decided by this Court in future proceedings.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: December 30, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 30, 2014, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113